

United States
Postal Service

USPS TRACKING #

9590 9402 9695 5199 5439 24

• Sender: Please print your name, address, and ZIP+4® in this box•

Roy S. McCandless, Esq,
P.O. Box 3716
Concord, NH 03302

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

## SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

United States Attorney General
United States Dep. of Justice
Civil Department
950 Pennsylvania Ave.,
NW Washington, D.C. 20530-0001

|||||||||||||||||||||||||||||||||||||||||
9590 9402 9695 5199 5419 24

2. Article Number (Transfer from service label)

9589 0710 5270 0325 5956 08

## COMPLETE THIS SECTION ON DELIVERY

A. Signature

X _____    □ Agent
                              □ Addressee

B. Received by (Printed Name)    C. Date of Delivery

Evie Aussak    FEB 0 4 2026

D. Is delivery address different from item 1?   □ Yes
   If YES, enter delivery address below:        □ No

INSPECTED 22

3. Service Type
□ Adult Signature
□ Adult Signature Restricted Delivery
☑ Certified Mail®
□ Certified Mail Restricted Delivery
□ Collect on Delivery
□ Collect on Delivery Restricted Delivery
□ _____ Mail
□ _____ Mail Restricted Delivery
   (0)

□ Priority Mail Express®
□ Registered Mail™
□ Registered Mail Restricted Delivery
□ Signature Confirmation™
□ Signature Confirmation™ Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt

# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF MASSACHUSETTS

**KAREN BEWERSDORFF, ET AL.**

*Plaintiff*

v.

**KRISTI NOEM, ET AL.**

*Defendant*

Civil Action No.:
**1:26−CV−10167−GAO**

# SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

**United States Attorney General**
**United States Department of Justice**
**Civil Department**
**950 Pennsylvania Ave.,**
**NW Washington, D.C. 20530-0001**

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) −−− or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) −−− you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

**Roy S. McCandless, Esq.**
**125 North State Street, PO Box 3716**
**Concord, NH 03301**

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**ROBERT M. FARRELL**

*CLERK OF COURT*

**/s/ − Flaviana de Oliveira**

*Signature of Clerk or Deputy Clerk*

**ISSUED ON 2026−01−16 13:07:30**, Clerk USDC DMA

Civil Action No.:  **1:26–CV–10167–GAO**

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for (name of individual and title, if any) _____

was received by me on (date)_____.

☐ I personally served the summons on the individual at (place)_____

_____on (date)_____ ; or

☐ I left the summons at the individual's residence or usual place of abode with (name)_____

_____, a person of suitable age and discretion who resides there,

on (date) _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on (name of individual)_____ , who is

designated by law to accept service of process on behalf of (name of organization)_____

_____ on (date) _____; or

☐ I returned the summons unexecuted because_____ ; or

☐ Other (specify) :


My fees are $ _____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true.


_____            _____
       Date                                        *Server's Signature*

                                     _____
                                                 *Printed name and title*


                                     _____
                                                  *Server's Address*

Additional information regarding attempted service, etc:

KAREN BEWERSDORFF and
FRANK BEWERSDORFF
988 Jenne Road, Reading VT 05062

                              Plaintiff

v.

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security
U.S. Department of Homeland Security
Transportation Security Administration
TSA Mail Stop 6009, 6595 Springfield Center Dr.
Springfield, VA  20598
                              Defendant

## **COMPLAINT**

Plaintiffs, Karen and Frank Bewersdorff, by their attorney  Roy S.

McCandless, Esq., brings this complaint against the United States Department of

Homeland Security and Transportation Security Administration ("TSA") pursuant

to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §1346(b) and under state law,

stating as follows:

## **INTRODUCTION**

1.      This action seeks recovery for the injuries caused by TSA Officers and

Agents in their normal working capacity and suffered by Plaintiff Karen

Bewersdorff ("Karen") and Frank Bewersdorff ("Frank"), after said TSA officers

and agents violated Karen's rights during a screening at Boston Logan International Airport Terminal B, American Airlines security checkpoint BW2030.

2.     On December 9, 2023 at approximately 2:30 PM, Karen and Frank arrived at American Airlines security checkpoint BW2030. Karen fully understood that she would need a TSA pat-down to go through the checkpoint as she has an implanted medical device that prohibited her from going through the scanner.

3.     Karen informed the male TSO[1] near the entrance to the scanner that she required a female pat-down.

4.     A female TSO then led Karen away from the conveyer to another lane to conduct the pat-down, about twenty to thirty feet away from Karen's luggage. From this new position, Karen could no longer view her items going through security and she was separated from her husband.

5.     The female TSO informed Karen that another woman was going to perform her pat-down. When Karen saw a masked, male TSO approaching her, she continued to scan the area for the second female TSO; however, the female agent informed her that the male TSO was the woman who was to perform her pat-down.

6.     Karen at first felt embarrassment over having perceived the agent to be a man. She then questioned her acceptance of the female TSO's assertion,

---

[1] Officers deputized by the Transportation Security Administration ("TSA") are referred herein as Transportation Services Officers, or "TSO".

searching for evidence of breasts (there were none), and becoming uneasy. Karen naively assumed that she was safe in the hands of the TSA; she never imagined that the TSA would try to deceive her. Because the second TSO was in-training, the female TSO was there to observe Karen's pat-down.

7.     As detailed below, the "pat-down" was inappropriately and unreasonably aggressive and forceful causing Karen pain at the site of her medical devices as well as pain in all areas of her body that the TSO trainee "patted-down".

8.     The "pat-down" humiliated and degraded Karen, as the male TSO trainee  unreasonably and aggressively manhandled Karen's genital areas and breasts, leaving Karen feeling violated and sexually assaulted.

9.     Karen incurred medical injuries as a result of the TSA's abusive "pat-down," its negligence, its failure to comply with the TSA Standard Operating Procedures, and its senior TSOs' failures to intervene to prevent the offensive and harmful conduct.

## PARTIES

10.    Plaintiff Karen Bewersdorff is an individual who resides at 988 Jenne Road, Reading VT 05062.

11.    Plaintiff Frank Bewersdorff is an individual who resides at 988 Jenne Road, Reading VT 05062. Karen and Frank are husband and wife.

12.    Defendant Kristi Noem is Secretary of the Department of Homeland Security. The TSA is a component of the Department of Homeland Security;

thus, Defendant has authority over TSA's policies and responsibility for ensuring its compliance with all legal requirements.

13.     Defendant United States of America is a proper defendant under the FTCA. *See* 28 U.S.C. §§1346(b), 2671. The United States is being sued for the personal injuries of Karen Bewersdorff and the loss of consortium suffered by Frank Bewersdorff caused by the wrongful acts or omissions of its employees, including the employees of the Transportation Security Administration (TSA) who conducted and/or supervised Karen's pat-down.

14.     The TSA personnel involved were employees of the TSA and were acting within the scope of their employment under circumstances where the United States, if a private person, would be liable to Plaintiffs in accordance with the law of the place where the act or omission occurred. *See* 28 U.S.C. §1246(b).

15.     Defendant Transportation Security Administration is an agency of the United States of America. The TSA employed unnamed officers/personnel who were acting within the scope of their employment at the time of the incident outlined within this Complaint.

## FACTUAL ALLEGATIONS

*TSA's Limited Administrative Search Authority.*

16.     TSA is responsible for providing security for commercial air travel.

17.     TSA is obligated by statute to provide for the screening of all passengers and property that will be carried aboard passenger aircraft operated

by domestic or foreign air carriers in the United States. This obligation includes ensuring a uniform procedure for searching and detaining passengers that, in addition to promoting safety, treats passengers appropriately.

18.    The search authority entrusted to TSA is not open-ended. Rather, it is circumscribed to allow suspicionless searches only to the extent that they are reasonably designed to detect weapons and explosives that may pose a threat to air safety. TSA is authorized by statute to promulgate screening regulations designed to protect passengers and property on an aircraft against an act of criminal violence or aircraft piracy.

19.    TSA possesses authority under federal law to deputize local law enforcement officers to implement the passenger screening process.

20.    Officers deputized by TSA are treated as federal law enforcement officers for purposes of meeting the requirements of TSA's statutory duties. They are also treated as federal officers for purposes of assessing liability for actions undertaken pursuant to any deputation agreement with TSA.

21.    A TSO's daily responsibilities include performing searches which may include physical interactions with passengers (e.g., pat downs, property searches) and conducting bag searches. As such, TSOs fall within the plain-text definition of an "investigative or law enforcement officer" under the FTCA, 28 U.S.C. § 2680(h).

*The Illegal and Offensive Search of Plaintiff*.

22.    Karen has Addison's Disease, in that her adrenal glands do not produce cortisol. The adrenals, when functioning correctly, produce additional cortisol in response to stress, helping to maintain the body's equilibrium. To treat her Addison's, Karen takes hydrocortisone tablets daily to provide her body with the missing hormone.

23.    Thus, due to her Addison's Disease, stressful situations can cause Karen's blood pressure to dangerously decrease and her heart rate to increase if she does not take a "stress dose" of hydrocortisone, that is, an extra dose when under stress.

24.    Karen also has Type 1 diabetes. Since 2004 Karen has been using an insulin pump to supply her body with this crucial hormone. Since 2016, Karen also has been using a continuous glucose monitor ("CGM") to manage her diabetes. These medical devices are implanted in her body in the abdominal area.

25.    In 2021 Karen suffered a cryptogenic stroke. In order for her heart to be monitored, an implantable loop recorder (ILR) was inserted eight millimeters under her skin over her heart.

26.    When traveling through security at airports and questioned by a TSO if she has sensitive areas, Karen always informs the agent of her insulin port and her CGM; however, she has never felt a need to divulge her ILR because no one had ever probed so deeply into her chest so as to cause her pain.

27. Because of the CGM, Karen was instructed by the device's manufacturer to avoid walking through airport scanners at security checkpoints.

28. Karen travels often and is accustomed to pat-downs in lieu of going through the scanners. Karen is familiar with TSA Standard Operating Procedures regarding pat-downs. Up to the time of the encounter described herein, Karen's experiences with TSA pat-downs had been without incident.

29. On December 9, 2023, at approximately 2:30 PM, Karen arrived at American Airlines security checkpoint BW2030. Karen fully understood that she would need a TSA pat-down to go through the checkpoint.

30. Before the pat-down began, Karen requested a female TSO perform the pat-down, and explained to the female TSO who had taken her aside that she had an insulin pump and the CGM.

31. In addition to the male TSO trainee who the female TSA said was to conduct the pat-down, the female TSO asked another TSO to assist, a man with red facial hair whose first name began with the letter J (hereinafter "TSO J").

32. At the time the pat-down began, Karen was in the company of the female TSO, TSO J (a male), and the TSO trainee (a male who was identified as a female), who was wearing a mask.

33. Karen never imagined the TSA would mislead her about the gender of the trainee TSO.

34. Karen was offered a private room for the pat-down procedure; she declined, however, because her previous pat-downs had always been without

incident and she felt comfortable having the procedure performed in a public space.

35.    Tragically, the "pat-down" was a full-out male-on-female assault.

36.    The male TSO trainee first squeezed his way down the length of Karen's arms, pulling so hard that Karen's crew-neck shirt was pulled from her neck, down over her shoulders, exposing her bra straps and flesh as he worked his hands down each arm.

37.    Karen turned her head toward TSO J and protested that the trainee was being too rough. TSO J said and did nothing.

38.    After  pressing his hands down the length of her back and buttocks, the male TSO trainee squatted to inspect Karen's legs. He raised his right hand swiftly all the way up the inside of her left leg, hitting her genitals, and then squeezed his hands together around her thighs, and all the way down each leg.

39.    Karen was alarmed but felt paralyzed, a common response by victims of an assault.

40.    Karen had at first tolerated the initial roughness of the pat-down because the TSO was said to have been in training.  As the assault progressed, however, she was rendered incapable of defending herself by her own body's failure to rally under stress. The supervising TSOs ignored her pleas for help, but stood there flanking Karen like sentinels.

41.     Moving around to face the front of Karen's body, the male TSO trainee then used the backs of his hands to mash down so forcefully on Karen's upper chest and breasts that he stunned her with pain and alarm.

42.     Karen's Medtronic Implantable Loop Recorder is implanted eight millimeters underneath her skin. The male TSO trainee's search for a potential hidden item under her clothing had gone so far as to search under her skin, as he applied brute force to mash against the Medtronic Implantable Loop Recorder causing Karen substantial pain.

43.     The male TSO trainee then cut hard in between Karen's breasts twice and dug into her ribs as he forcefully cut his hand under each breast.

44.     Karen again pleaded with TSO J to do something about the roughness. TSO J said and did nothing.

45.     By this point Karen was experiencing pain, incredible stress, fear, and confusion, exacerbating the negative effects of her Addison's disease and her body's inability to produce cortisol. Her head began to swim, with immediate fatigue and nausea developing.

46.     Despite Karen's repeated protests, TSO J remained silent.

47.     The male TSO trainee then lowered his head, facing Karen's crotch. He repeatedly pawed at her lower abdomen causing her embarrassment and pain as he failed to take care in an area that she had informed him was sensitive.

48.     The male TSO trainee stood up and addressed Karen: "Spread your legs further apart." Karen was confused, as she was already standing with her

feet the requested shoulder-width apart. "Spread them!" demanded the female TSO. Karen complied with the demand.

49.     Despite Karen spreading her legs further apart, the male TSO trainee again demanded that Karen "Spread them further." "Further!" the female TSO barked. Karen complied, but now she was physically unstable, off-balance, and feeling more vulnerable.

50.     Karen was distraught.  Her body reacted to the trauma by "fawning". Fawning is the fourth "F" of trauma responses:  Fight, Flight, Freeze, and Fawn.[2]  As a result of this trauma response, Karen began speaking more quietly and breathing more deeply; turning inward in self-defense, rather than lashing out; trying to stem the effects of a body that cannot respond to stress on its own.

51.     Karen's paralysis in the midst of an assault is not uncommon. She implored the intervention of TSO J three times to correct the trainee's roughness with not so much as a word in response from him in her defense.

52.     Karen continued to suffer as the male TSO trainee squeezed his hands down Karen's thighs, pulling with such force that she had to hold her waistband to keep her pants from being pulled down as he worked his way down the front of her legs.

53.     After the TSO trainee finished, he had Karen touch her pump and then swiped her hands to test for explosive residue.

---

[2] See, e.g., Walker, Pete. (2013). <u>Complex PTSD: From Surviving to Thriving</u>. Lafayette, CA: Azure Coyote Publishing.

54.     As the male TSO trainee and the female TSO walked to the machine to perform the residue test, Karen turned to TSO J to look him squarely in the face. She told TSO J, "I have been patted down countless times, but never so rough as that." TSO J remained silent.

55.     Karen glanced over her shoulder to the station where the other two TSOs stood, and saw for the first time the rear profile of the male TSO trainee's body. Now fully realizing that she had been correct in perceiving that the trainee was a man, she turned her head back to TSO J and asked him if the trainee was a trans-woman.

56.     TSO J spoke for the first time in response to Karen's questions: "I don't know, and I can't ask."

57.     Karen hung her head and her whole body slumped. She had been deceived into submitting to a man "patting her down". When that pat-down had become an assault, she had tolerated it – initially because she thought a trainee might not know any better, but then because pain, fear, and stress had rendered her incapable of defending or speaking up for herself.

58.     Karen stood quietly, refusing to look at the male TSO trainee when he returned to tell her that she was free to go. The male trainee and female TSO left, but TSO J gently asked Karen if she would like to speak with a supervisor. She softly said "yes" and TSO J left to find one.

59.     Karen couldn't imagine that a woman would ever treat another woman as she had been treated: with the TSO mashing her breasts, forcefully cutting

his hands between and under each breast; lowering his head to Karen's pubic area as he pawed at her abdomen, and touching her buttocks. Karen could not even bring herself to demonstrate on her husband's body the force that had been used on her own.

60. Karen's husband, Frank, who was located about thirty feet away, smiled at her from the baggage scanner, unaware of what had just happened to his wife as he had been preoccupied with going through security himself and watching their luggage.

61. Karen made her way the thirty or so feet over to Frank and relayed to him that she had just been assaulted by a male TSO, and that an agent was going to take them to a supervisor.

62. TSO J reappeared and led Karen and Frank to a supervisor.

63. Karen asked the supervisor if the trainee who did her pat-down was a trans-woman. The supervisor responded without hesitation, "I don't know, and I can't ask."

64. Karen asked the supervisor if he were married. He responded that he was. Karen suggested that he ask his wife if she would be okay with a man touching her entire body – because only Karen's husband has that right to her body.

65. The supervisor replied, "Unfortun –" ', catching himself and covering his mouth, continued, "that is just the way the world is today."

66.     But that is not what TSO regulations, federal law, and state law require. Rather, the TSA is required to provide a female officer to pat down a female traveler.  The exception to that rule can only be authorized by the head of the TSA in the airport and for good reason – such as lack of availability of a female officer. A modified pat-down is to be performed by a supervisory TSO or the Security Director – not by a male trainee.  No such authority was obtained.

67.     As Karen and Frank were speaking with the TSO supervisor, they saw a man enter the security area from the side and walk their way. It was her assailant, the male TSO trainee.

68.     As Karen's eyes met his, she summoned the courage to say, "I need to talk to you." He passed by without slowing down, turning his head to the side and shooting a "Yeah" over his shoulder.

69.     Karen was too distraught to have the presence of mind to  ask the supervisor to call the trainee back. The supervisor did nothing to address the assault and sexual harassment.

70.      The pat-down humiliated and degraded Karen. She felt violated and sexually assaulted. The supervising TSOs did nothing to respond to Karen's pleas to stop the assault.

71.      The assault caused Karen extreme mental distress and physical pain. During and after the assault she experienced waves of panic, anxiety, fear, racing heart, shortness of breath, uncontrollable shaking, a precipitous drop in blood pressure, fatigue, a swimming head, uncontrollable crying, and nausea.

72. Without Frank's assistance, she would not have been able to board the plane.

73. The negative effects have not abated. As a direct result of the assault, Karen suffers from depression, anxiety, lost sleep, shame, humiliation, anger, oppressive thoughts, and Post Traumatic Stress Disorder, requiring ongoing counseling and medical care.

74. Her mental distress made it impossible for Karen to resume her master's studies in January 2024.

75. Because of the trauma she suffered, Karen now experiences great apprehension when she approaches security in airports. She must take an additional dose of hydrocortisone to prepare for her body's reaction to the post-traumatic stress she experiences and the fear of a possible repeat of an assault by a TSO.

76. The trauma has damaged Karen and her husband Frank's marital relationship. Before the assault, she and Frank had a sexually fulfilling relationship. Now the emotional complications caused by the trauma have damaged their ability to experience sexual intimacy.

77. To add insult to injury, the TSA has rebuffed Karen's attempts to alert it to the assault by its agents and has failed to comply with its legal obligations to provide to her information requested by her through the Freedom of Information Act ("FOIA").

78.     Karen filed reports of the assault through the TSA's on line forum, with the Boston TSA, Massport, and the Massachusetts State Police with the desire to alert the TSA of the violation of her rights and to prevent any such assaults on other female travelers.

79.     Karen also filed requests with the Boston TSA and Massport to preserve evidence regarding the incident, including but not limited to any video recordings of the security area where she was assaulted.

80.     On January 10, 2024, Karen filed with the TSA a FOIA request seeking copies of documents and any video recordings relating to the assault. To this day, despite Karen's and her attorney's follow-up requests seeking responses and information, the TSA has failed to provide any documents or recordings responsive to Karen's FOIA request.

81.     The TSA's failures to respond to Karen's requests have further demeaned her and added to her distress as she fears other vulnerable woman have been placed in harm's way due to the TSA's ignoring her warnings and pleas to it to protect other woman from such assaults.

*Karen and Frank File Claims under the  Federal Tort Claims Act.*

82.     On July 11, 2025, Plaintiffs Karen and Frank Bewersdorff timely filed Form 95 with the Defendant under the Federal Tort Claims Act, 28 U.S.C. § § 2671 et seq., claiming damages for injuries suffered as a result of the conduct alleged in this complaint.

## COUNT I

## FOURTH AMENDMENT TO THE U.S. CONSTITUTION – UNCONSTITUTIONAL SEARCH AND SEIZURE

83. The Plaintiffs reallege and incorporate herein paragraphs 1 to 82.

84. The invasive search of Plaintiff by Defendant's agents constituted an unreasonable search and seizure under the Fourth Amendment to the United States Constitution.

85. The invasive search of Plaintiff by Defendant's agents was conducted pursuant to a policy, practice, or custom that violates the Fourth Amendment to the United States Constitution.

86. The "administrative search doctrine" allows the government to conduct some level of limited warrantless searches under the theory that the searches are aimed at a public safety concern rather than uncovering evidence of criminality (or, in the alternative, under the theory that by presenting one's self at the TSA checkpoint, one is consenting to the search).

87. TSA policy expressly forbids male TSOs to pat down females.

88. The search of Karen's body, the groping of her breasts, inner thighs, abdomen, buttocks, and groin area by the male TSO was therefore conducted without consent, warrant, the blessing of the administrative search doctrine, or authorization by government policy whatsoever, and therefore was unreasonable.

89.     Given clear and unambiguous policy and training to the contrary, as well as the well-defined limitations of the administrative search doctrine, no reasonable TSA officer would have thought that they were allowed to permit a male TSO to search Karen, a female who specifically requested a woman TSO officer to conduct the pat down.

90.     Karen's constitutional rights were thus knowingly and intentionally violated.

91.     Defendant United States of America is thus liable for damages stemming from the unconstitutional search of Karen's person via the Federal Tort Claims Act.

## COUNT II

## CIVIL BATTERY

92.     The Plaintiffs reallege and incorporate herein paragraphs 1 to 91.

93.     The male TSO groped and handled Karen's breasts, inner thighs, buttocks, and groin area, against her demand for a female officer to conduct the pat down. That TSO was not authorized by law to do so.

94.     Karen gave her consent for a female TSO to perform her pat-down, she did not consent for a male TSO to do so.

95.     This offensive contact was made by the male TSO intentionally and knowingly.

96.     A reasonable person would consider such contact to be highly offensive.

97.     Karen did consider this contact to be highly offensive.

98.     Karen suffered injuries, including physical and emotional distress, as a result of this offensive contact.

99.     Defendant United States of America is thus liable for damages stemming from a battery by the male TSO trainee upon Karen via the Federal Tort Claims Act.

## COUNT III

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

100.    The Plaintiffs reallege and incorporate herein paragraphs 1 to 99.

101.    The male TSO trainee ostensibly conducted an unauthorized search of Karen's body, squeezing and manhandling her breasts, inner thighs, buttocks, and groin area.

102.    A pat down search whereby a male TSO aggressively squeezes and manhandles the breasts, inner thighs, buttocks, and groin area of a female when given notice that such intimate contact by a person of the opposite gender is unwelcome is a universally humiliating experience, the offensive nature of which is immediately apparent to any human.

103.    The male TSO trainee did, in fact, cause severe emotional distress in Karen, including panic, anxiety, fear, racing heart, shortness of breath, uncontrollable shaking, and the long-term debilitating effects of depression, anxiety, and Post Traumatic Stress Disorder.

104.    The TSO agents, including those supervising the trainee, knew or should have known that a male TSO squeezing and manhandling the breasts,

inner thighs, buttocks, and groin area of a female when given notice that such intimate contact by a person of the opposite gender is unwelcome would foreseeably cause severe emotional distress.

105.   The TSOs therefore negligently caused the severe emotional distress experienced by Karen.

106.   Defendant United States of America is thus liable for damages stemming from the negligent infliction of emotional distress via the Federal Tort Claims Act.

## COUNT IV

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

107.   The Plaintiffs reallege and incorporate herein paragraphs 1 to 106.

108.   The male TSO trainee ostensibly conducted an unauthorized search of Karen's body, aggressively squeezing and manhandling her breasts, inner thighs, buttocks, and groin area.

109.   A pat down search whereby a male TSO aggressively squeezes and manhandles the breasts, inner thighs, buttocks, and groin area of a female when given notice that such invasive, intimate contact by a person of the opposite gender is unwelcome is a universally humiliating experience, the offensive nature of which is immediately apparent to any human.

110.   The male TSO did, in fact, cause severe emotional distress in Karen, including panic, anxiety, fear, racing heart, shortness of breath, uncontrollable

shaking, and the long-term debilitating effects of depression, anxiety, and Post Traumatic Stress Disorder.

111.    The TSO agents, including those supervising the male trainee, knew or should have known that a male TSO aggressively squeezing and manhandling the breasts, inner thighs, buttocks, and groin area of a female when given notice that such intimate contact by a person of the opposite gender is unwelcome would foreseeably cause severe emotional distress.

112.    The TSOs therefore intentionally caused the severe emotional distress experienced by Karen.

113.    Defendant United States of America is thus liable for damages stemming from the intentional infliction of emotional distress via the Federal Tort Claims Act.

## COUNT V

## NEGLIGENCE

114.    The Plaintiffs reallege and incorporate herein paragraphs 1 to 113.

115.    The male TSO trainee ostensibly conducted an unauthorized search of Karen's body by aggressively squeezing and manhandling her breasts, inner thighs, buttocks, and groin area contrary to federal rules, regulations, and protocols which required that a female TSO conduct the search.

116.    Such conduct that violates federal rules, regulations, and protocols consists of negligence per se.

117.    Defendants' negligent conduct caused Karen physical and emotional injury, including but not limited to panic, anxiety, fear, racing heart, shortness of breath, uncontrollable shaking, and the long-term debilitating effects of depression, anxiety, and Post Traumatic Stress Disorder.

118.    Defendant United States of America is thus liable for damages stemming from the negligent conduct of its agents via the Federal Tort Claims Act.

## COUNT VI

## LOSS OF CONSORTIUM

119.    The Plaintiffs reallege and incorporate herein paragraphs 1 to 118.

120.     The Defendants' conduct caused severe emotional distress in Karen, including panic, anxiety, fear, racing heart, shortness of breath, uncontrollable shaking, and the long-term debilitating effects of depression, anxiety, and Post Traumatic Stress Disorder.

121.    Due to Defendants' conduct which has caused Karen's severe emotional distress, Frank has been severely harmed, seeing his wife's emotional suffering, and having lost the services, companionship, intangible benefits, and support of Karen in their marital relationship.

122.    Defendant United States of America is thus liable for damages suffered by Frank's loss of consortium via the Federal Tort Claims Act.

## COUNT VII

## FREEDOM OF INFORMATION ACT VIOLATIONS, 5 U.S.C. § 552

123.    The Plaintiffs reallege and incorporate herein paragraphs 1 to 122.

124.    On January 11, 2024, Plaintiff submitted a FOIA request to TSA seeking records and video recordings relating to the pat-down and the assault on her person she suffered on December 9, 2023.

125.    The FOIA request was submitted via TSA's online FOIA portal.

126.    Under FOIA, TSA was required to respond within twenty working days of receipt of the request, or within thirty days in "unusual circumstances," as provided by 5 U.S.C. § 552(a)(6)(A)–(B).

127.    As of the date of this filing, more than 485 working days have passed since TSA received the request. TSA has failed to (a) produce responsive records, (b) issue a proper denial, or (c) communicate a legitimate basis for delay.

128.    Plaintiff has constructively exhausted all administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

129.    TSA has wrongfully withheld agency records in violation of FOIA.

130.    Plaintiff has a legal right to the requested records, and there is no legal basis for TSA's failure to comply with FOIA.

131.    Plaintiff demands that the Defendant immediately conduct a reasonable search for all records responsive to Plaintiff's FOIA request and promptly produce all responsive, non-exempt records; refrain from continuing to

withhold responsive records; and award Plaintiff reasonable attorney's fees and costs under 5 U.S.C. § 552(a)(4)(E).

### DAMAGES

132. The Plaintiffs reallege and incorporate herein paragraphs 1 to 131.

133. Plaintiff Karen Bewersdorff demands that the Defendant pay her One Million Dollars ($1,000,000) to compensate for the violation of her rights and the physical and emotional pain and suffering caused by Defendants' actions.

134. Plaintiff Frank Bewersdorff demands that the Defendant pay him Two Hundred Fifty Thousand Dollars ($250,000) to compensate for his loss of consortium, lost services, and loss of the intangible benefits of marriage as a result of Defendant's wrongful conduct.

135. Both Plaintiffs demand that the Defendant pay Plaintiffs their reasonable attorney's fees and costs pursuant to 5 U.S.C. §552(a)(4)(E).

WHEREFORE, Plaintiffs Karen Bewersdorff and Frank Bewersdorff respectfully request that the Honorable Court order the following:

A. That process be issued and served on the United States of America and that it be required to file an answer with the Court within the time prescribed by law;

B. Award the Plaintiffs compensatory and other appropriate damages to which they are entitled or which otherwise would be just in this case, in the sum certain of at least one million two hundred and fifty thousand dollars, for

pain and suffering, severe mental and emotional anguish, loss of enjoyment

of life, loss of past and future income, past, present, and future medical

expenses, loss of consortium, and other damages as appropriate;

C.  Award Plaintiffs' attorneys' fees and costs;

D.  Award Plaintiffs pre and post-judgment interest;

E.  Order Defendant to produce records responsive to Plaintiffs' Freedom of

Information Act requests;

F.  Award Plaintiffs all other relief to which they may be entitled and as
necessary and proper to do justice in this case; and,

G.  Grant such other equitable or necessary relief as may be just.

Respectfully submitted this 6th day of January, 2026, by

Karen Bewersdorff and
Frank Bewersdorff

Through their attorney
Roy S. McCandless, Esq., PLLC,

/s/ Roy S. McCandless
Roy S. McCandless, Esq., BBO 642055
125 North State Street
PO Box 3716
Concord, NH  03302-4137
(603) 856-8441 – Telephone
(603) 856-7425 – Fax
roysmccandless@gmail.com

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Karen Bewersdorff and Frank Bewersdorff | Kristi Noem, in her capacity as Secretary of the US Dept. of Homeland Security |

**(b)** County of Residence of First Listed Plaintiff    Windsor County, Verm
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Roy S. McCandless, Esq.
125 North State Street, Concord NH 03301
603-841-3671

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [x] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC. Sec. 2671, Federal Tort Claims Act
Brief description of cause:
Battery, emotional distress

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
1,250,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
01/06/2026

SIGNATURE OF ATTORNEY OF RECORD
/s/Roy S. McCandless

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____